German S. Lopez v. Commissioner. Irene Lopez v. Commissioner.
Lopez v. Commissioner
Docket Nos. 32233, 44564, 44565.
United States Tax Court
T.C. Memo 1956-203; 1956 Tax Ct. Memo LEXIS 91; 15 T.C.M. (CCH) 1053; T.C.M. (RIA) 56203; August 30, 1956
*91 Frank Steinberg, Esq., 235 Lincoln Road, Miami Beach, Fla., for the petitioners. Hugh G. Isley, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In docket number 32233 respondent determined deficiencies in the income tax liability of petitioner German S. Lopez for the years 1946 and 1947 in the respective amounts of $6,594.96 and $4,201.34, together with 50% additions thereto on account of alleged fraud pursuant to section 293 of the Internal Revenue Code of 1939. In docket numbers 44564 and 44565, respondent determined a deficiency in the income tax liability of petitioners German S. Lopez and Irene Lopez for the year 1948 in the amount of $7,067.44. The cases have been consolidated for hearing and opinion. Several of the issues originally raised by the pleadings have been settled, abandoned or conceded by the parties including the abandonment by the respondent of the so-called fraud penalties for the years 1946 and 1947. The remaining issues have to do with the correct amount of the income tax liability of petitioner German S. Lopez for the years 1946 and 1947, and the correct amount of the income tax liability of both petitioners *92 for 1948. Findings of Fact Part of the facts have been stipulated and we incorporate herein the stipulation of facts filed by the parties together with the exhibits attached thereto by this reference. German S. Lopez and Irene Lopez were married in 1933 and now reside in Hollywood, Florida. For the taxable years 1946 and 1947 they filed separate income tax returns. For the year 1948 they filed a joint return. All of these returns were filed with the Collector (now district director) of Internal Revenue for the district of Florida. German S. Lopez, sometimes hereinafter referred to as the petitioner, came to the United States from Cuba in 1922. He is now an American citizen. In 1927 he moved to Hollywood, Florida, and since that time has been engaged in the restaurant and hotel business. In 1941 the petitioner went into business for himself and leased a restaurant in Hallandale, Florida, which he later purchased in 1945 or 1946. During 1943 and the first part of 1944 his restaurant was closed because of the war but was reopened in the fall of 1944 and petitioner continued to operate it under the name "The Lopez Restaurant" until he sold the restaurant in May of 1948. His restaurant *93 sales were composed primarily of food and liquor. Petitioner's wife, Irene Lopez, was associated with the petitioner in the operation of the Lopez Restaurant during the taxable years. Petitioner was general manager of the business and his wife aided him in taking care of the bookkeeping in co-operation with an independent bookkeeper and his assistant who came in at various times during the year. Irene was paid $3,000 for her services for each of the years 1946 and 1947, and reported this sum on her separate returns for these years. In the rear of the Lopez Restaurant was a gambling casino operated by Glenn Wood who built the casino on the property owned by petitioner. Wood operated the casino during the taxable years under an oral agreement with the petitioner whereby the petitioner received twenty-five per cent of the net proceeds of the gambling activities carried on in the casino. Petitioners' system of record keeping was the same for each of the years 1946, 1947 and 1948. Petitioner reported his income during these years on a hybrid basis, utilizing inventories but deducting payables in the year that they were paid. No detailed records were kept of the amounts received *94 by the petitioners from the gambling casino. The independent bookkeeper employed by petitioner also prepared' the income tax returns of the gambler who operated the casino. Whatever the amount was of rents paid deducted as such on the gambler's return was included as rents received on petitioner's income tax returns for the taxable years. None of the original guest checks or cash register tapes were available to respondent's examining agent since they had been accidentally destroyed prior to the examination. The only record of petitioners' operations for the taxable years 1946, 1947 and 1948 made available to respondent's examining agents was a black looseleaf book containing single entry spread sheets purporting to show the income and expense of the Lopez Restaurant, together with the canceled checks and check-stubs for a part of the years involved. Entries in the looseleaf book were made by Irene, the bookkeeper and the latter's assistant. Petitioners' tax returns for each of the years involved were prepared by their independent bookkeeper from the spread sheets contained in the black looseleaf book. Petitioners' records for the years 1946 and 1947 were inadequate. Persons *95 connected with horse races and horses frequently visited the Lopez Restaurant and on occasions would give the petitioners "tips" on horse races. On one occasion in 1945 Irene won $2,000 as a result of betting on a horse which amount was deposited in petitioners' business bank account but was not recorded on any books maintained by petitioners. It was included as "other income" in Irene's income tax return for that year. Irene occasionally made and won small bets in the taxable years. No record was made by her of any winnings in these years and none was included in the taxable income reported by either of the petitioners for the taxable years. Respondent determined petitioner's income for the taxable years 1946 and 1947 by the net worth plus nondeductible expenditures method. Petitioners concede that respondent was justified in the use of this method. Subsequent to the commencement of the net worth examination by respondent's agents for the years 1946 and 1947, petitioners' bookkeeper submitted information on petitioners' accounts payable as of December 31, 1947, and claimed that the accounts payable outstanding at the end of each year should be considered in computing petitioner's *96 net worth. In respondent's computation of petitioner's net worth, credit was given the petitioner for accounts payable as of December 31 of each of the years 1945, 1946 and 1947. Petitioner's assets and liabilities as of December 31, of the years 1945 to 1947, inclusive, together with the resulting increases or decreases therein for the years 1946 and 1947, and nondeductible expenditures are in the amount set out in exhibit 7-G attached to the stipulation, which is "a schedule showing respondent's computation of the taxable income of German S. Lopez for the years 1946 and 1947 by the increase in net worth plus nondeductible expenditures method." All of the facts and figures therein contained are correct. Petitioner is entitled to a standard deduction of $500 for the taxable year 1946 and to a deduction from adjusted gross income for the taxable year 1947 as follows: (a) Bad debt deduction totaling $1,347.50 (b) Such portion of $1,650 medical expenses will be determined under Rule 50. Respondent determined petitioner's gross receipts for the calendar year 1948 by the bank deposits method. Petitioners' gross receipts were determined by respondent as follows: Deposits in Dania Bank
$ 81,487.08
Deposits of check for sale of Inven-
tory in Hollywood Bank
2,745.52
Total deposits
$ 84,232.60
Add: Cash payments not de-
posited: Petty cash expenditures
$ 211.18
Cash Payroll undepos-
ited
18,684.45
18,895.63
Total deposits and undeposited
receipts
$103,128.23
Less: Deposits not receipts in
1948: 1947 receipts deposited
$ 1,540.45
Transfer from Quincy
Bank (Deposited
4/20/48)
500.00
Deposit of cash bank-
roll from register
1,500.00
Redeposits of bad checks
620.00
Total deposits not receipts
$ 4,160.45
Total Gross Receipts
$ 98,967.78
*97 The parties have stipulated that all of the foregoing figures are correct with the reservation that "petitioners * * * contend that all deposits in the Dania Bank do not represent receipts of the business." Petitioners reported gross receipts in 1948 from the Lopez Restaurant in the amount of $88,311.47. In his determination for the taxable year 1948, the respondent, in addition to increasing by $10,656.31 petitioner's gross receipts by the bank deposit method, as set forth above, disallowed the following expenses claimed on petitioner's 1948 return: Purchases
$6,084.32
Laundry
261.47
Repairs
264.93
Utilities
568.07
Supplies
445.64
Advertising
1,093.79
Ice and fuel
69.98
Taxes
395.92
Total
$9,184.12 These expenses were paid in 1948; but were incurred prior to December 31, 1947. At the insistence of petitioner's bookkeeper these accounts payable were included in the accounts payable of $12,094.10 deducted as a liability of petitioner from his assets in respondent's computation of petitioner's net worth as of December 31, 1947. On May 13, 1948, petitioners sold the Lopez Restaurant, including the real estate, furniture, furnishings and fixtures, *98 trade name and good will. The contract of sale recited a selling price of $110,000, of which $50,000 was paid in cash and the balance of $60,000 was secured by a mortgage on the real estate. The sum of $10,000 of the $50,000 in cash was placed in escrow, payment to petitioners being conditioned upon the lifting of a gambling injunction. The gambling injunction was not lifted, and on April 12, 1949, the $10,000, less attorney's expenses, was returned to the purchaser. Petitioners incurred a long-term capital gain in this transaction computed as follows: Cash received
$40,000.00
Value of mortgage received
45,000.00
Total received
85,000.00
Less: adjusted basis
54,493.95
Amount of gain
30,506.05
Less: Expense of sale
1,238.05
Net long-term capital gain
29,268.00
50% taxable
14,634.00
As of December 31, 1948, petitioners were not engaged in the operation of any business. As of that date they had no inventory and no accounts payable. During the taxable year 1949 petitioners incurred an operating loss in the operation of the Lopez South Ocean Club in the amount of $10,019.73. For the taxable years 1946 and 1947 petitioners' correct net taxable income *99 was as follows: 1946
$19,085.64
1947
15,585.35
For the taxable year 1948 petitioners understated gross receipts and overstated expenses in the amounts determined by respondent. Opinion KERN, Judge: Several of the issues originally presented in these cases have been eliminated by concessions of the parties made either at the trial of the cases or on brief. There remain three questions to be resolved, one of which concerns the income tax liability of petitioner German S. Lopez for the years 1946 and 1947, and two of which concern the income tax liability of petitioners for the year 1948. The first question is whether respondent properly included as an asset in petitioner's net worth computation for the year 1946 a "mortgage receivable" of $5,000. Respondent introduced in evidence a certified copy of a mortgage executed by Frederick Wallace and Jeannette Wallace as mortgagors on April 9, 1946, and filed for record with the Clerk of the Circuit Court of Broward County, Florida, on April 18, 1946, whereby the mortgagors conveyed certain real state in that county to "G. S. Lopez and Irene Lopez, husband and wife" named therein as the mortgagees to secure the *100 payment of a note, a copy of which was attached to the mortgage, evidencing the obligation of the mortgagors to pay to the mortgagees $5,000 on or before one year after April 9, 1946, [1946] with interest at 6 per cent. The signatures of the mortgagors were witnessed by two witnesses and acknowledged before a notary public. Respondent also introduced in evidence a certified copy of a "Satisfaction of Mortgage" executed by G. S. Lopez and Irene Lopez on January 31, 1947, and filed for record with the Clerk of the Circuit Court of Broward County on February 4, 1947, whereby G. S. Lopez and Irene Lopez, husband and wife, after stating that they had received full payment of the note for $5,000 secured by the mortgage executed by the Wallaces, acknowledged satisfaction of the mortgage and directed the Clerk of the Circuit Court "to cancel the same of record." Their signatures were witnessed by two witnesses and were acknowledged before a Notary Public. Petitioners at the trial herein admitted that they had signed the "Satisfaction of Mortgage" described above, but denied having any recollection of the transaction evidenced by the mortgage and its satisfaction, and specifically denied *101 that they had ever loaned $5,000 to the Wallaces. They also testified that they had attempted without success to get information concerning this transaction from Frederick Wallace who was out of the state at the time of the trial of these cases. At the close of the testimony given in these cases on January 25, 1956, the Court held the record open and recessed the trial to January 27, 1956, for the purpose of giving petitioners and their counsel an opportunity to get information upon which might be based a reasonable explanation for the execution of the documents above described which would be consistent with petitioners' testimony to the effect that they remembered nothing about the transaction evidenced by the documents and that they had neved loaned $5,000 to Wallace in spite of the statements made in those documents. When these cases were again called for trial on January 27th pursuant to the adjournment of January 25th, the Court was informed by counsel for petitioners that he had no additional testimony to offer. The record on this question is strange and far from satisfactory. However, in view of the contemporaneous documents in one of which the petitioners formally acknowledged, *102 under their admitted signatures executed before a Notary Public and in the presence of two witnesses, the existence and satisfaction of a debt owed to them by the Wallaces in the amount of $5,000, and the inability of petitioners to give any reasonable explanation for the existence of these documents in spite of the opportunity afforded them by the Court, we conclude that the petitioner has failed to prove that the "mortgage receivable" in question was erroneously included as an asset in the net worth computation of petitioner for the year 1946. The second question is whether respondent properly increased petitioners' taxable income for the year 1948 in the amount by which petitioners' deposits in their business bank account plus cash payments not deposited less "deposits not receipts in 1948" exceeded the gross receipts reported by petitioners in their return for that year. Petitioners stipulated that the amounts of such deposits, cash payments not deposited and deposits not receipts in 1948 as used in respondent's computation were correct subject to a contention that "all deposits in the Dania Bank do not represent receipts of the business". During the time petitioners operated *103 their restaurant in 1948 a considerable portion of their income was derived from illegal sources being the percentage of the profits of a gambling establishment located on their premises. In the absence of proof we may assume that it was not paid to petitioners by check according to ordinary business routine. Accordingly, the verfication of its amount by ordinary accounting practices would be difficult if not impossible. There were no cash register tapes or guest cards to support the amount of the receipts from petitioners' legal business entered on their "books", and their "books" were themselves inadequately maintained. Under these circumstances respondent was justified in using petitioners' deposits in their business bank accounts as a check upon the accuracy of the gross receipts of petitioners as stated in their "books" and reported in their return. See Estate of George L. Cury, 23 T.C. 305. By use of this check respondent determined that petitioners' gross receipts had been understated by $10,656.31. In his computations respondent considered that over $4,000 of petitioners' deposits did not represent receipts realized by petitioners in 1948. Petitioners, in effect, *104 claim that this latter amount should be larger. In support of this contention petitioner answered "yes" to the following question asked him (without objection) on direct examination: "Q. Did you deposit any additional monies [in addition to the receipts of the business], loans, exchanges or any other sums in the bank account of the business during those years [1946, 1947 and 1948]?" He also testified: "We have made, from time to time - I can't remember exactly, but we have made transfers from one bank account to another to take care of bills because bills were coming due and we had to take money from one account to another, and also we deposited checks that were given to me for cashing. We had an affiliation of a gambling - we had an affiliation of some activities in gambling nearby, and they gave me checks to cash for them, and we would go to the bank and turn over the cash to them, and other transactions which I cannot recall other than that." He was also asked on direct examination the following question: "Q. You state of your own knowledge that the amount that you deposited in the Dania Bank does not represent all the income from your restaurant?" His answer was: *105 "That's right." Petitioner's wife testified with regard to bank deposits as follows: "I would deposit the receipts, not daily, what I had, and I would keep a certain amount out of the cash that night, and the next night I probably would have to redeposit that. In other words, I had two hundred, and I didn't need the whole two hundred, so I would put a hundred back in the bank the next day. Then I would keep the other the following day. I had to have cash there. I deposited the receipts, and accordingly, I drew the checks to pay the accounts payable." She also testified that she would take checks of "people that we were associated with" and would "cash them in our accounts, and some of them wouldn't be good, and some of them would be good, and they would get the money." Again, she testified if there were any loans during the first three months of 1948, "we deposited it", but when asked whether there were any loans during those months she answered "I don't remember." We have set out in extenso the testimony of petitioners on this matter. In our opinion it does not constitute persuasive proof that the deposits in the Dania Bank do not represent receipts of their business by any *106 amount in excess of the $4,160.45 determined by respondent to represent deposits which were not receipts in 1948. The third question involves the correctness of respondent's action in disallowing as deductions in 1948 expenses paid by petitioners in that year but which were incurred in 1947. These expenses in the total sum of $9,184.12 were included in the larger sum of $12,094.10 representing accrued accounts payable as of December 31, 1947, which, at the insistence of Petitioners' bookkeeper, was deducted as a liability of petitioner from his assets in computing his net worth for that date, thus decreasing by that amount his taxable income for that year as ascertained by respondent by use of the so-called net worth method. Petitioners do not question the use by respondent of this net worth method in ascertaining the correct amount of petitioner's taxable income for 1947 or the deduction by respondent in his computations of these expenses as accrued accounts payable. Petitioners used substantial inventories in the conduct of their business and should have used an accrual method of accounting and reporting their income. Instead they reported their income on a hybrid method, using *107 inventories but deducting only expenses which had been paid. In his net worth computations for 1946 and 1947, respondent treated the accounts payable outstanding at the end of each of these years as accrued items. Not only was this proper but it was also done at the insistence of petitioners' representative and resulted in the computation of taxable income of petitioner for 1947 in an amount considerably less than it would have been otherwise. Since petitioners liquidated their business in May of 1948 they had no inventory or accounts payable as of December 31 of that year, and respondent's consideration of petitioners' business transactions for all of the taxable years as on an accrual basis does not result in inconsistencies or in any distortion of income. However, petitioners' position on this question would permit the deduction of these accounts as accrued liabilities in the computation of petitioner's income for 1947 and also permit their deduction as cash items in computing their taxable income for 1948. Under the circumstances of the instant case it is our opinion that petitioners' position on this question is untenable and that respondent's treatment of the items here involved *108 was correct. Decisions will be entered under Rule 50.